UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Keith Dookeran, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 11 C 2802 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| County of Cook, Illinois, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION & ORDER**

Plaintiff Keith Dookeran filed suit against Cook County ("the County") alleging that the County discriminated against him on the basis of his race and national origin and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The County has now filed a motion to dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Dookeran's claims are precluded by the doctrine of res judicata and the *Rooker-Feldman* doctrine. Because the court agrees that the claims are barred by res judicata, the motion is granted.

**I. BACKGROUND**

Dookeran's claim stems from the termination of his employment at John H. Stroger Hospital of Cook County ("Stroger"). Dookeran, a surgeon and surgical oncologist, was hired at Stroger in 2000 subject to biennial reappointments. *See Dookeran v. Cnty. of Cook*, 920 N.E.2d 633, 636 (Ill. App. Ct. 2009). Neither on his initial application nor on his 2002 reappointment application did Dookeran indicate that he had ever received a formal reprimand from a previous employer. In fact, quite the opposite—on the 2002 application, he affirmatively indicated that he had not been

reprimanded in the past four years. This representation was false. Within the preceding four years, Dookeran had been reprimanded for "creating a hostile work environment" at Mercy Hospital, his prior place of employment. Indeed, his position at Mercy Hospital as director of surgical research and associate program director of the general surgery residency program was terminated as "a consequence of [Dookeran's] unprofessional conduct toward Mercy Hospital employees." *Id.* at 637.

Dookeran's omission went unnoticed until April 2004, at which point he again applied for reappointment at Stroger. On that application, Dookeran disclosed his Mercy reprimand for the first time. The application went to his department chair, Dr. Zaren, who then submitted it to Stroger's credentials committee pursuant to Stroger's medical staff bylaws. The credentials committee investigated the issue, and then recommended to the executive medical staff ("EMS") that Dookeran be denied reappointment. EMS in turn referred the matter to the peer review committee, which recommended a twenty-nine day suspension of Dookeran's clinical privileges. EMS adopted the recommendation, but increased the suspension period to thirty days, which would have required Dookeran to report the suspension to a national databank. By virtue of this consequence, Dookeran's right to a hearing and appeal under the bylaws was triggered.

Dookeran requested such a hearing, and a five-member hearing committee heard testimony. At the close of the hearing, the hearing committee submitted its findings to EMS. The hearing committee found that Dookeran did not meet his burden of establishing that he did not willfully falsify his 2002 reappointment application. In light of that finding, and in view of the hearing committee's belief that Dookeran lacked insight into his anger management issues, the hearing committee recommended to the

2

EMS that Dookeran's staff membership be suspended or revoked. The EMS nonetheless continued to recommend a thirty-day suspension to the medical director and joint conference committee. However, the joint conference committee voted to adopt the hearing committee's recommendation to revoke Dookeran's staff membership. The joint conference committee sent that recommendation to the Cook County Board for final action, and the Cook County Board denied Dookeran's reappointment application on June 20, 2006.

On August 1, 2006, Dookeran filed a petition for a common law writ of *certiorari* in the chancery division of the Circuit Court, Case No. 2006-CH-15376, seeking review of the Cook County Board's decision. *See Chi. Title Land Trust Co. v. Bd. of Trustees*, 878 N.E.2d 723, 727 (Ill. App. Ct. 2007) (explaining that the writ is available to obtain court review over administrative actions where the act conferring power on the agency does not adopt Illinois' Administrative Review Law, 735 Ill. Comp. Stat. Ann. 5/3-101). Meanwhile, on October 16, 2006 Dookeran filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). In those charges, Dookeran alleged that he had been denied privileges and discharged due to his race (black) and national origin (Trinidadian). He also stated that he was discharged in retaliation for similar charges he had filed on June 27, 2005.

The Circuit Court reached an initial decision on January 30, 2008. The court agreed that Dookeran's behavior was troubling, but it found that the hearing committee's recommendation was not supported by the facts. The court vacated the denial of reappointment and remanded the matter to the hearing committee "to recommend a lesser

sanction." *Dookeran*, 920 N.E.2d at 643. The County sought reconsideration; the court denied that motion, but modified its judgment by ordering the Cook County Board to suspend Dookeran's clinical privileges for thirty days. The County appealed, and Dookeran cross-appealed. In reviewing the Circuit Court's judgment, the Illinois Appellate Court engaged in a two-step review process: first, it examined the agency's findings of fact to determine if those findings were "contrary to the manifest weight of the evidence"; and second, it evaluated whether "the agency's factual findings provide[d] a sufficient basis for concluding 'cause' for discharge exists." *Id.* at 643-44 (citations and quotations omitted). Because the appellate court was convinced that the factual findings were supported by the evidence and provided a sufficient basis for discharge, that court reversed the trial court's order and upheld the denial of Dookeran's 2004 reappointment application, "thereby terminating his employment at Stroger." *Id.* at 441. Dookeran sought leave to appeal to the Illinois Supreme Court, which was denied. *See Dookeran v. Cnty. of Cook*, 930 N.E.2d 408 (Ill. 2010).

On January 28, 2011 the EEOC issued a Dookeran a right to sue letter, and Dookeran has now filed a complaint with this court, alleging that the County discriminated against him based on his race and national origin "when it denied him medical privileges and discharged him, as well as by subjecting him to different terms and conditions of employment." He further claims that these acts were undertaken in retaliation for filing his 2005 EEOC charges.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the defendant may seek to dismiss the case if the plaintiff "fail[s] to state a claim upon which relief can be granted." The court accepts as true all well-pleaded facts and draws all reasonable inferences in the

4

plaintiff's favor. *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). Although Federal Rule of Civil Procedure 8(a) only requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint also must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The relevant question is whether the complaint includes enough factual allegations to "raise a right to relief above the speculative level." *Id.*

### III. ANALYSIS

As noted, the County has moved to dismiss on two bases: first, that Dookeran's claims are barred by the *Rooker-Feldman* doctrine, as lower federal courts "do not have jurisdiction to conduct direct review of state court decisions," or to review claims "inextricably intertwined" with a state court's judgment, *see Kansas City S. Ry. Co. v. Koeller*, --- F.3d ----, 2011 WL 3132278, at *6 (7th Cir. 2011); and second, that his claims are precluded by the doctrine of res judicata, as he is attempting to "re-litigat[e] issues that were or could have been raised" before the Illinois courts, and there has been a final judgment on the merits. *See Johnson v. Cypress Hill*, 641 F.3d 867, 874 (7th Cir. 2011) (citations and quotations omitted). The court addresses each point in turn.

### A. *Rooker-Feldman* Doctrine

The court will address the *Rooker-Feldman* issue first, as that doctrine "curtails subject-matter jurisdiction" where it is implicated. *See Carter v. AMC, LLC*, --- F.3d ----, 2011 WL 1812524, at *1 (7th Cir. 2011). The *Rooker-Feldman* doctrine is "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district

5

court review and rejection of those judgments." *Kansas City S. Ry. Co.*, 2011 WL 3132278, at *6 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). In such a case, only the Supreme Court has jurisdiction to review the state court judgment; "lower federal courts" cannot. *Crawford v. Countrywide Home Loans, Inc.*, --- F.3d ----, 2011 WL 2906157, at *2 (7th Cir. 2011) (citing *Skinner v. Switzer*, 131 S.Ct. 1289, 1297 (2011)); *see also Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("The doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency.").

As the County points out, the doctrine "applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." *Kelley v. Med-1 Sol'ns, LLC*, 548 F.3d 600, 603 (7th Cir. 2008). At root, however, *Rooker-Feldman* is "a narrow doctrine"—it does not "prevent state-court losers from presenting independent claims to a federal district court, even if the new claims involve questions related to those in the original state court proceedings." *Crawford*, 2011 WL 2906157, at *2 (citations and quotations omitted). Thus, to determine whether *Rooker-Feldman* applies, the court evaluates "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Edwards v. Illinois Bd. of Admissions*, 261 F.3d 723, 728-29 (7th Cir. 2001).

Here, Dookeran brings all of his claims under Title VII. No state court ever addressed any issue relating to discrimination or retaliation. The present claims do not in

6

any way "result[ ] from" the state court judgment, nor do they invite this court to review and reject the state court's judgment. *See id.*; *Kansas City S. Ry. Co.*, 2011 WL 3132278, at *6. The state court's review was limited to determining whether the administrative agency's findings of fact were contrary to the manifest weight of the evidence or provided a sufficient basis for a cause discharge. None of these findings need be reviewed, much less disturbed, by this court should it analyze Dookeran's Title VII claims. The mere fact that this court could order *relief* similar to that sought in the state court is of no import. *See Skinner*, 131 S.Ct. at 1297 (holding that *Rooker-Feldman* did not bar a petitioner's challenge to the constitutionality of the underlying state statute in federal district court even though he had previously been denied DNA testing by the state courts); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court."). Because Dookeran's Title VII claims were not raised before the state court, nor are they "inextricably intertwined" with the state court's judgment, the *Rooker-Feldman* doctrine does not deprive this court of subject matter jurisdiction.

**B. Res Judicata**

The court next must determine whether the state court litigation precludes Dookeran from bringing his claims before this court. Under the doctrine of res judicata, "final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and . . . constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Arlin-Golf, LLC v. Vill. of*

*Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011) (quotation marks and citation omitted).

Because Dookeran's earlier suit was brought in state court, this court looks to Illinois law to determine whether res judicata applies. *Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1029 (7th Cir. 2011) (citation omitted). Under Illinois law, res judicata bars further litigation where (1) there is a final judgment in the first suit; (2) there is identity of the causes of action; and (3) there is an identity of parties. *See id.* For purposes of the second requirement, Illinois uses the so-called "transactional test" to determine whether separate claims constitute the same cause of action. *Arlin-Golf, LLC*, 631 F.3d at 822. "[S]eparate claims will be considered the same cause of action . . . if they arise from a single group of operative facts, regardless of whether they assert different theories of relief. . . . [T]he transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction. *Id.* (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (Ill. 1998) (alterations in original)). As a corollary to the transactional test, Illinois has adopted the doctrine of merger and bar, "which precludes the sequential pursuit not only of claims actually litigated, but of those that could have been litigated." *Garcia v. Vill. of Mount Prospect*, 360 F.3d 630, 639 (7th Cir. 2004); *see Arlin-Golf, LLC*, 631 F.3d at 821 (noting that the doctrine of res judicata applies "not only as to every matter which *was* offered to sustain or defeat the claim or demand, but as to any other matter which *might* have been offered for that purpose.") (quotation and citation omitted)).

Dookeran agrees that the parties are identical and that the judgment rendered by the Illinois Appellate Court was a final judgment. However, he argues that his Title VII claims did not arise until after the Cook County Board decided to terminate his employment, so there was "no opportunity nor was there a procedure to allow Dr. Dookeran to litigate that decision prior to the time that the Cook County Board rendered its decision." This argument misses the mark entirely, as the relevant issue is whether the state court could have heard the Title VII claims. By his own admission, the conduct challenged in his EEOC charge stems from the Cook County Board's decision, and that decision was made before Dookeran ever filed his case before the chancery division. Dookeran next argues that he could not have brought his Title VII claim to the Circuit Court because he was prohibited from introducing new evidence following the administrative proceedings. In making this argument, he claims that this court should ignore *Garcia v. Village of Mount Prospect*, 360 F.3d 630 (7th Cir. 2004), because "it undermines both the spirit of Title VII and of [c]ongressionally intended federal deference to the state administrative agencies"; instead, he urges the court to adopt the reasoning of the Eighth Circuit in *Tolefree v. City of Kansas City*, 980 F.2d 1171 (8th Cir. 1992). (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss, ECF No. 15, at 2, 5-7.) The County responds that *Garcia* controls.

The County is correct. *Garcia* dealt with a nearly identical situation, and guides this court's analysis. In *Garcia*, a Hispanic police officer named Garcia, who had been a witness in another person's national origin discrimination case, applied for duty-related disability benefits. *Garcia*, 360 F.3d at 632. Following a medical examination and a hearing, the Pension Board denied Garcia any duty-related benefits, but provided non-

9

duty-related benefits. There, as here, Garcia filed a complaint in the Circuit Court of Cook County seeking to reverse an administrative agency's decision; there, as here, Garcia limited his challenge to whether the agency's decision was against the manifest weight of the evidence or arbitrary and capricious (never mentioning any employment discrimination or retaliation claim); and there, as here, Garcia filed an EEOC charge while his case was pending in the state court. *Id.* at 633. The state court ultimately affirmed the Pension Board's decision, and upon receipt of a right to sue letter from the EEOC Garcia filed a case in this court.

The Seventh Circuit dismissed the case on the grounds of res judicata.[1] As relevant here, the court found that Garcia's civil-rights claims arose from the same core of operative facts—namely, the Pension Board's decision to deny him duty-related disability benefits—as those facts were the very facts that gave rise to Garcia's appeal of the Board's decision. *Id.* at 637-38. The court recognized that a federal court could deny preclusion "if the state-court proceedings denied the parties a full and fair opportunity to litigate by falling below the minimum requirements of due process." *Id.* at 634. The court concluded, however, "Illinois circuit courts could have exercised jurisdiction over Garcia's independent federal civil-rights claims either directly or after Garcia exhausted available administrative remedies," thus, it was possible for Garcia "to join those claims with his administrative appeal of the Board's decision," and he "had a full and fair opportunity to litigate his civil-rights claims." *Id.* at 644. While there were some

---

[1] The district court dismissed the action under the *Rooker-Feldman* doctrine, but the Seventh Circuit affirmed on other grounds. In so doing, the Seventh Circuit noted that in general, "for the *Rooker-Feldman* doctrine to apply, the complained-of injury must have been caused by the state-court judgment itself"; that because Garcia's injury was not caused by the judgment, "it might be said that the doctrine does not apply." *Garcia*, 360 F.3d at 635 n.5. However, the court declined to definitively decide the issue "given the complexities of the doctrine." In light of the Supreme Court's recent admonishments regarding the narrowness of the doctrine, *see Exxon Mobil*, 544 U.S. at 284, this court is convinced that the doctrine does not apply for the reasons stated above.

practical difficulties in exhausting the administrative claims first, the court found that those difficulties did not prevent res judicata from applying. *Id.* at 642. The court also expressly addressed the argument Dookeran makes here—that Garcia could not present his federal civil-rights claims because those claims required evidence outside of the administrative record. The court was not convinced, noting that "[b]ecause a civil-rights claim under federal law is a distinct cause of action, the scope of administrative review with respect to the appeal of the Board's decision is irrelevant with respect to the circuit court's review of any newly joined civil-rights claims." *Id.* at 643-44. The court further stated that the litigant "*chose* to pursue an administrative appeal" instead of simply pursing his federal civil-rights claims solely in federal court—so while "a plaintiff is free to pursue his claims strategically, [ ] he must abide by the consequences of those choices." *Id.* at 644.

The Seventh Circuit's reasoning is directly applicable here, and it controls the result. Dookeran is the one who decided how he would present his claims—all of which stemmed from the same set of operative facts—and he is the one that must live with the consequences of that choice. Because Dookeran's Title VII claims could have been litigated in the state courts, his claims are precluded.

### IV. CONCLUSION

For the reasons set forth above, the court grants the County's motion to dismiss.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 26, 2011